Michael A. RADESCHI, in his own right and as representative of all other persons in the same class or similarly situated, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA and Department of Labor and Industry of the Commonwealth of Pennsylvania, Defendants.

Civ. A. No. 92–1364.

United States District Court,
W.D. Pennsylvania.

Dec. 20, 1993.

John J. Petrush, Beaver, PA, for plaintiff.

Gloria A. Tischuk, Office of Attorney General, Pittsburgh, PA, for defendants.

## OPINION OF THE COURT

LEE, District Judge.

Before this Court are defendants' Motion to Dismiss plaintiff's class action alleging age discrimination (Document No. 2) and their Supplemental Motion to Dismiss (Document No. 7). For the following reasons, the defendants' Supplemental Motion to Dismiss will be granted and the case will be remanded to state court.

## BACKGROUND

Plaintiff, Michael A. Radeschi, brings this class action against the Commonwealth of Pennsylvania and its Department of Labor and Industry alleging willful violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et seq.*, arising from the use by the Department's Bureau of Employment Security and Job Training ("BES") of a battery of tests called the General Aptitude Test Battery/Validity Generalization (the "Aptitude Tests"). Plaintiff's complaint sets forth the following.

In 1990, plaintiff, at age 47, sought employment as a private security guard with Security Bureau, Inc., which informed him it was hiring only through the BES. Plaintiff then sought referral from BES, which required him to take the so-called "Family 5" subtests of the Aptitude Tests in order to determine his suitability for such employment. Based upon his Family 5 test results, the BES refused to refer plaintiff for employment as a security guard. Plaintiff contends that the Family 5/Aptitude Tests have a disparate impact on older job applicants who are protected against discriminatory treatment on the basis of age by both the ADEA and the PHRA.

On April 17, 1990, plaintiff filed a charge of willful age discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming loss of income and economic benefits. The EEOC investigated and reviewed the case and, on February 26, 1992, determined there were probable ADEA violations, finding that use of the Family 5/Aptitude Tests "results in an adverse impact against persons who are 40 years of age or older and that this impact becomes more significant as the age of the affected population increases." Letter determination from EEOC area director, Complaint, Exhibit A, at 2. The EEOC then initiated conciliation. (As of defendants' filing their Motion to Dismiss with this court, conciliation was in progress. Defendants' Motion to Dismiss, ¶ 4.)

On May 18, 1992, plaintiff commenced this action in the Court of Common Pleas of Beaver County, Pennsylvania, alleging four

causes of action: Count I, by plaintiff individually, for violations of the ADEA; Count II, by plaintiff individually, for violations of the PHRA; Count III, as a class action representative, for violations of the ADEA; and Count IV, as a class action representative, for violations of the PHRA. All federal and state counts essentially seek the same relief, namely "all past and future lost earnings, fringe benefits and other privileges or advantages of employment," liquidated damages in the amount of "unpaid minimum wages" under the ADEA (Counts I and III only), "general compensatory damages" under the PHRA (Counts II and IV only), reasonable attorney's fees and costs, and "additional or other relief, legal or equitable, as may be appropriate under the circumstances."

Defendants filed a Notice of Removal on June 2, 1992, and removed the action to the District Court for the Western District of Pennsylvania, pursuant to the removal statutes, 28 U.S.C. §§ 1441–1451. Shortly thereafter, defendants filed their initial Motion to Dismiss (on June 10, 1992), alleging four grounds for early dismissal: (1) Plaintiff has failed to state a claim, specifically for willfulness, upon which relief can be granted, pursuant to F.R.CIV.P. 12(b)(6); (2) Plaintiff has failed to state a claim, specifically the class action claim under the ADEA, upon which relief can be granted; (3) the cause of action under the ADEA is barred by the statute of limitations; (4) an exhaustion of remedies argument that an ADEA claim cannot be brought while conciliation procedures are in progress.

In their Supplemental Motion to Dismiss, filed more than one year later, on July 1, 1993, defendants raise, for the first time, the Eleventh Amendment to the Constitution of the United States as a bar to further prosecution of plaintiff's claims. This Supplemental Motion purports to have been filed "pursuant to Fed.R.Civ.Proc. 12(b), (2), and (6)," and requests this court dismiss the complaint in its entirety "with prejudice." In defendants' view, the Eleventh Amendment confers "constitutional immunity" upon .states

and their agencies from suit in both state and federal courts. Defendants' Brief in Support of Supplemental Motion to Dismiss, at 2.

For the reasons to follow, this court holds that the Eleventh Amendment bars it from adjudicating plaintiff's claims against the Commonwealth of Pennsylvania and its Department of Labor and Industry; however, the Eleventh Amendment does not, as defendants contend, confer upon them "constitutional immunity" from *all* suit but, rather, operates as a jurisdictional bar only to the federal judiciary which is prohibited from exercising the "Judicial power of the United States"[1] to hear plaintiff's claims. Because the court is deprived of jurisdiction to adjudicate these claims, the proper course is not to dismiss with prejudice on the merits as defendants contend, but to remand to the state court as required by 28 U.S.C. § 1447(c).

## STANDARDS OF REVIEW

■ Although defendants bring their Eleventh Amendment objections by way of a motion to dismiss under F.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be granted and under F.R.CIV.P. 12(b)(2) for "lack of jurisdiction over the person", the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction to entertain suits against the states. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984) (Eleventh Amendment "deprives federal courts of *any jurisdiction* to entertain" suits against the states); *Brierly v. Pennsylvania Dep't of Transp.,* 1992 WL 372327, 1992 U.S.Dist. LEXIS 19645 (E.D.Pa.1992); *and Faust v. Pennsylvania Dep't of Revenue,* 1989 WL 156311, 1989 U.S.Dist. LEXIS 15361 (E.D.Pa.1989). Accordingly, the court will treat the supplemental motion as one to dismiss under F.R.CIV.P. 12(b)(1) for "lack of subject matter" jurisdiction, and will apply the analysis appropriate for such motion.

---

1. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI.

The Third Circuit recently explained the differences between the legal standards governing Rule 12(b)(6) and 12(b)(1) motions in *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir.1991), and set-out the following regarding the latter:

> A district court can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of the claim. But dismissal is proper only when the claim "appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 [66 S.Ct. 773, 776, 90 L.Ed. 939] (1946). *See also Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 [94 S.Ct. 772, 776, 39 L.Ed.2d 73] (1974) (claim must be "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy").…
>
> … When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

(parallel citations omitted).

■ In considering a facial challenge to the assertion of subject matter jurisdiction, the correct legal standard requires the court take the factual averments of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990), *cited in Cooley v. United States*, 791 F.Supp. 1294 (E.D.Tenn.1992). If jurisdiction is based on a federal question, the pleader claiming federal jurisdiction (here, the defendants by their removal notice) simply must show that the federal claim is not frivolous. *Bartholomew v. Librandi*, 737 F.Supp. 22 (E.D.Pa.), *aff'd* 919 F.2d 133 (3d Cir.1990). The court may dismiss an action for lack of subject matter jurisdiction at such an early stage only if it affords the plaintiff the safeguard of accepting all allegations of the complaint as true, drawing reasonable factual inferences from the complaint in plaintiff's favor, and

only if it appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction. *Kronmuller v. West End Fire Co. No. 3*, 123 F.R.D. 170, 172 (E.D.Pa.1988). If the court dismisses the complaint for lack of subject matter jurisdiction, any accompanying defenses and other pending motions become moot and are not resolved. *Id.; see also Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253 (N.D.Ill.1992), *and Pineros Y Campesinos Unidos del Noroeste v. Goldschmidt*, 790 F.Supp. 216 (D.Or.1990).

■ Moreover, because lack of jurisdiction would make any decree in a case void and the continuation of the federal court litigation futile, the removal statutes must be strictly construed and all doubts resolved in favor of remand. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985).

## THE ELEVENTH AMENDMENT

■ By its terms, the Eleventh Amendment prevents the exercise of the "Judicial power of the United States" against a state by citizens of *another* state. *See* note 1. From as early as *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the United States Supreme Court has interpreted the Eleventh Amendment to the United States Constitution as a bar to suits in federal court against a state by its *own* citizens as well as by citizens of other states.[2] Furthermore, this constitutional impediment to suit in federal court extends to state governmental bodies, such as Pennsylvania's Department of Labor and Industry, where the department acts as an "arm of the state." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

■ The Eleventh Amendment "deprives federal courts of any jurisdiction to entertain" suits brought by citizens against a state. *Pennhurst, supra* at 465 U.S. 99 at 104 S.Ct. 907. However, the Eleventh Amendment's bar to suit is not absolute; states may waive their immunity and consent to be sued in federal court and Congress may

2. The Court recently declined an invitation to reconsider and overrule *Hans*. *Dellmuth v.*

*Muth*, 491 U.S. 223, 229 n. 2, 109 S.Ct. 2397, 2401 n. 2, 105 L.Ed.2d 181 (1989).

abrogate the states' sovereign immunity. *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). A state's sovereign immunity can be waived or consented to by the state's unequivocable expression of consent to be sued in federal court. *Pennhurst, supra* at 465 U.S. 99 at 104 S.Ct. 907.

The test for determining whether a state has waived its immunity from the exercise of federal court jurisdiction is a stringent one. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985). A state's consent to suit in federal court must be by the "most express language or by such overwhelming implications from the text [of the relevant statute] as [will] leave no room for any other reasonable construction." *Id., supra* at 239–40, at 105 S.Ct. 3146, *quoting Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974).

■ In addition, without a state's consent, a state's sovereign immunity can be abrogated by Congress, through its powers to enforce the prohibitions of the Fourteenth Amendment and to regulate the commerce activities of the states, if it has made its intention to abrogate immunity "unmistakably clear" in the explicit language of the statute. *Atascadero, supra* at 473 U.S. 238–42, at 105 S.Ct. 3145–47. "To temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear.'" *Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989).

The Supreme Court has adopted particularly strict standards governing consent/waiver by the states and abrogation by the Congress of a state's Eleventh Amendment immunity and will recognize such consent/waiver or abrogation only by the most unequivocal expressions of intent by the government. *Feeney, supra* at 495 U.S. 304–05, at 110 S.Ct. 1872; *Pennhurst, supra* at 465 U.S. 99–100, at 104 S.Ct. 907. The Court will

not lightly infer, nor permit other courts to lightly infer, a Congressional intent to alter the traditional balance between the federal government and the states. *Gregory v. Ashcroft,* 501 U.S. 452, —— ——, 111 S.Ct. 2395, 2400–01, 115 L.Ed.2d 410, 423–24 (1991).

## ABROGATION BY CONGRESS

■ Section 623 of the ADEA makes it unlawful for an "employer" to fail or refuse to hire or to discharge or otherwise discriminate against any individual because of such individual's age. 29 U.S.C. § 623(a)(1). The same section of the ADEA makes it unlawful for an "employment agency" to fail or refuse to refer for employment or otherwise discriminate against any individual because of such individual's age. 29 U.S.C. § 623(b). The term "employer" is defined in § 630 of the ADEA as "a person engaged in an industry affecting commerce" with twenty or more employees, while an "employment agency" is defined as "any person regularly undertaking with or without compensation to procure employees for an employer." 29 U.S.C. § 630(b) & (c).

In 1974, Congress explicitly expanded the statutory definition of "employer" to include a "State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b). According to most but not all courts that have addressed the issue, Congress has made "unmistakably clear" by this amendment its intent to abrogate states' Eleventh Amendment immunity to that extent. *Davidson v. Board of Governors of State Colleges & Univs.,* 920 F.2d 441, 442–43 (7th Cir.1990); *Swanson v. Colorado Dept. of Health,* 773 F.Supp. 255, 257–58 (D.Colo. 1991) (collecting cases). This court need not and does not decide where the Third Circuit would align itself on this issue, however, because this case does not arise in the state-as-employer context but in the state-as-employment agency context.

Defendants are sued not as plaintiff's employer but for alleged ADEA and PHRA age discrimination violations while acting as an employment agency through the Department's BES. The issue therefore is whether

Congress has abrogated states' immunity from suit in federal court in ADEA cases involving a state acting in its capacity as an "employment agency." Clearly, Congress has not manifested such an intent and has not made "unmistakably clear" an intention to abrogate the Eleventh Amendment in the "employment agency" situation. This court is not at liberty to infer such an intent.

To the contrary, Congress' explicit amendment of "employer" in 1974 to *include* States, coupled with its failure to similarly amend the definition of "employment agency," indicates if anything, a deliberate decision *not* to abrogate states' immunity in the employment agency context. Therefore, because Congress, through the ADEA, has not abrogated sovereign immunity for state-run employment agencies, the Eleventh Amendment bars this court's consideration of plaintiff's ADEA claims, as well as his state PHRA claims. *Pennhurst, supra* at 465 U.S. 121, at 104 S.Ct. 919.

## PENNSYLVANIA'S CONSENT TO SUIT IN FEDERAL COURT

■ Similarly, although it is a closer question, the court finds that Pennsylvania has not consented to federal lawsuit or otherwise waived its Eleventh Amendment immunity by removing this case from state court to the Western District of Pennsylvania. Removal of a case initiated in state court, coupled with other affirmative acts by state officials or agencies, has occasionally been deemed to constitute an unequivocal expression of consent to suit in federal court sufficient to confer jurisdiction upon a federal court despite the usual Eleventh Amendment bar. *See, e.g., Dion v. Commissioner, Maine Dep't of Human Services,* 743 F.Supp. 80, 86 n. 12 (D.Me.1990) (removal to federal court plus filing third-party claims against federal defendants waived Eleventh Amendment immunity); *Colorado Health Care Ass'n v. Colorado Dep't of Social Servs.,* 598 F.Supp. 1400, 1406 (D.Colo.1984), *aff'd* 842 F.2d 1158

(10th Cir.1988) (removal plus express stipulation plus consistent failure to challenge explicit arguments that state defendants had waived Eleventh Amendment immunity). However, mere removal of a case by state officials does not, without much more, waive the Eleventh Amendment immunity unless those state officials are explicitly authorized to waive such immunity and clearly and unequivocally do so. *See, e.g., Silver v. Baggiano,* 804 F.2d 1211, 1214 (11th Cir.1986); *Estate of Porter v. Illinois,* 1993 WL 211386, 1993 U.S.Dist. LEXIS 8180 (N.D.Ill.1993); *Idoux v. Lamar Univ. System,* 817 F.Supp. 637, 641 (E.D.Tex.1993); *Boyle v. City of Liberty,* 1993 WL 20177, 1993 U.S.Dist. LEXIS 1077 (W.D.Mo.1993); *and Stephans v. Nevada,* 685 F.Supp. 217, 219 (D.Nev. 1988).

Since removing the case, defendants have simply filed the initial motion to dismiss and a supplement in attempts to have the case decided in their favor based on asserted deficiencies in the plaintiff's complaint. There is no indication in the record that Pennsylvania has authorized its officials prosecuting this case to waive immunity · and, in fact, the notice of removal explicitly states: "Defendants expressly do not waive any claims of constitutional immunity under the Eleventh Amendment in filing this removal...." Notice of Removal, ¶ 6. The court holds, therefore, that the defendants' removal of the case did not constitute a waiver or consent to be sued in federal court.

Following a determination that a case has been improvidently removed because the federal court lacks subject matter jurisdiction, the "case shall be remanded" to the state court as dictated by section 1016(c) of the Judicial Improvements and Access to Justice Act of 1988, 28 U.S.C. § 1447(c).[3] *See also M.A.I.N. v. Commissioner, Maine Dep't of Human Services,* 876 F.2d 1051, 1053–54 (1st Cir.1989); *and Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188 (5th Cir.1986).

---

**3.** As amended, the removal statutes now provide: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28

U.S.C. § 1447(c). Plaintiff has not requested costs or attorney fees under this section nor has he cited this section of the removal statutes as requiring remand in the event the court determined it lacked subject matter jurisdiction. Accordingly, the court will not award attorney fees or costs.

The case will be remanded, therefore, to the Court of Common Pleas of Beaver County which has concurrent jurisdiction over the ADEA claims[4] in addition to its jurisdiction over the state PHRA claims, and the court will leave it to Beaver to adjudicate the merits of the case, including the resolution of the objections raised by the defendants in their initial motion to dismiss.

An appropriate Order will be entered.

## ORDER OF COURT

AND NOW, this 20th day of December, 1993, IT IS HEREBY ORDERED that the Defendant's Supplemental Motion to Dismiss the Complaint (Document No. 7) is GRANTED for lack of subject matter jurisdiction, and the case is dismissed.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss the Complaint (Document No. 2) is DENIED AS MOOT.

IT IS FURTHER ORDERED that this case is remanded to the Court of Common Pleas of Beaver County, Pennsylvania, in accordance with 28 U.S.C. § 1447(c).

4. 29 U.S.C. § 626(c); *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 200 (4th Cir.1990), citing *Jacobi v. Highpoint Label, Inc.*, 442 F.Supp. 518 (M.D.N.C.1977).